**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 15, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP1210-CR**

Cir. Ct. No. **2015CT923**

STATE OF WISCONSIN

**IN COURT OF APPEALS**
**DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JUSTIN W. PAULL,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dane County: WILLIAM E. HANRAHAN, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] Justin Paull pled guilty to and was convicted of operating a motor vehicle while intoxicated, third offense. On appeal, Paull

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

challenges the circuit court's denial of his motion to suppress the results of a warrantless blood draw taken from Paull following a traffic accident. Specifically, Paull argues that: (1) the blood draw violated the Fourth Amendment's protection against unreasonable searches and seizures because the statute on which the officer relied to obtain it is unconstitutional; and (2) the court erroneously ruled that, assuming that the statute is unconstitutional, suppression of the evidence of Paull's blood test result was not appropriate because the evidence was seized "as a result of good faith reliance on existing law."

¶2 Like the circuit court, I assume, without deciding, that the statute sections challenged by Paull, WIS. STAT. §§ 343.305(3)(ar) and 343.305(3)(b)[2], are unconstitutional. However, I also conclude that the circuit court properly denied Paull's suppression motion based on the good faith exception to the exclusionary rule. Therefore, I affirm.

## BACKGROUND

¶3 The following background is taken from testimony at the suppression hearing. The pertinent facts are undisputed.

¶4 Officer Ryahn Smith of the City of Sun Prairie Police Department was dispatched to the scene of a traffic accident on an evening in September 2015. Upon arriving at the scene, Smith observed a damaged motorcycle lying on its side in the road. Smith also observed Paull lying in the road. Paull was "bleeding from the back of his head," "had several abrasions on his body," and "was in and out of

---

[2] The language of the implied consent statute that we reference throughout this opinion has not changed during or since the times relevant to Paull's prosecution.

consciousness." Additionally, Paull's speech was slurred, and he "smelled of intoxicants." At least one witness at the scene reported that Paull had been driving the motorcycle.

¶5 Smith arrested Paull for operating while intoxicated, and medical personnel transported Paull to a hospital. Smith retrieved blood testing equipment from the police station and drove to the hospital. When Smith arrived at the hospital, he found Paull unconscious. While Paull was unconscious, Smith read aloud Wisconsin's "Informing the Accused" form and directed a nurse to draw a blood sample from Paull. The blood draw occurred approximately two-and-a-half hours after Smith first arrived at the scene of the accident. A test of Paull's blood sample reported a blood alcohol concentration of .16.

¶6 The State charged Paull with operating a motor vehicle while intoxicated, third offense.[3] Paull moved to suppress the results of the blood test, arguing that the statute authorizing the warrantless blood draw of an unconscious driver is unconstitutional in violation of the Fourth Amendment. The State argued that the statute is constitutional. In the alternative, the State argued that Smith reasonably relied on WIS. STAT. § 343.305(3) in directing the blood draw, such that suppression would be inappropriate under the good faith exception to the exclusionary rule.

¶7 The circuit court denied Paull's motion to suppress the results of the blood test. The court assumed, without deciding, that the statute is facially

---

[3] The State also charged Paull with operating with a prohibited alcohol concentration, third offense, but later dismissed that charge.

3

unconstitutional, but ruled that suppression of the blood test evidence was inappropriate because Smith had relied on the statute in good faith.

¶8 Following the circuit court's denial of Paull's suppression motion, Paull pled guilty to operating while intoxicated, third offense. Based on that plea, the court sentenced Paull to, among other things, six months in jail and stayed the sentence pending resolution of this appeal. In this appeal, Paull challenges the circuit court's denial of his suppression motion.

¶9 In the time since Paull filed this appeal, the United States Supreme Court decided *Mitchell v. Wisconsin*, 139 S.Ct. 2525 (2019), in which the court examined whether a warrantless blood draw from an unconscious driver violated the Fourth Amendment. *Id.* at 2531-2. Although the constitutionality of the statute challenged by Paull was presented as an issue, the court declined to discuss that issue. *Id.* at 2551 (Gorsuch, J., dissenting). By order of this court dated January 15, 2019, the parties were given the opportunity to request supplemental briefing to discuss the effect of the court's decision in *Mitchell*, and they declined to do so.

## DISCUSSION

¶10 As stated, Paull argues that the blood draw violated the Fourth Amendment because the statute on which the officer relied to obtain it is unconstitutional, and that, therefore, the circuit court should have suppressed its results. Wisconsin's "implied consent" statute generally "deems drivers to have consented to breath or blood tests if an officer has reason to believe they have committed one of several drug- or alcohol-related offenses." *Id.*, 139 S.Ct. at 2531 (citing WIS. STAT. § 343.305(2)-(3)). On appeal, as below, both parties direct their arguments to the constitutionality of the provisions in Wisconsin's

4

implied consent statute that provide that, in certain situations, a "person who is unconscious … is presumed not to have withdrawn consent …[and] one or more samples … may be administered to the person." WIS. STAT. § 343.305(3)(ar) and (b). Both parties also address whether, if these provisions in the implied consent statute are unconstitutional, suppression was not appropriate due to the good faith exception to the exclusionary rule.

¶11    I assume, without deciding, that the unconscious driver provisions of the statute are unconstitutional. I now turn to the application of the good faith exception to the exclusionary rule. I first summarize the standard of review and applicable legal principles, next present additional pertinent background, and then explain why I conclude that the circuit court properly denied Paull's motion to suppress because the officer directed the blood draw in good faith reliance on existing law.

*I. Standard of Review and Applicable Legal Principles*

¶12    "Generally, in reviewing motions to suppress, we apply a two-step standard of review. First, we review the circuit court's findings of fact, and uphold them unless they are clearly erroneous. Second, we independently review the application of constitutional principles to those facts." ***State v. Scull***, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562 (internal citations omitted). "The application of the good faith exception to the exclusionary rule is an issue of law" which the appellate court reviews independently of the decision rendered by the circuit court. ***Id.***, ¶17.

¶13    The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const., Amend. IV.[4]  "A blood draw conducted at the direction of the police is a search subject to the Fourth Amendment requirement that all searches must be reasonable." *State v. Padley*, 2014 WI App 65, ¶23, 354 Wis. 2d 545, 849 N.W.2d 867.  Warrantless searches are per se unreasonable and therefore unlawful, subject to certain exceptions, none of which are argued by the parties to have existed here.  *See id.*, ¶23 (listing exceptions).

¶14    The exclusionary rule, which allows suppression of evidence obtained in violation of the Fourth Amendment, is a prudential doctrine invoked solely to deter future violations.  *See Davis v. United States*, 564 U.S. 229, 236-37 (2011).  "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Id.* at 236 (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)).  Because "a deterrence purpose can only be served when the evidence to be suppressed is derived from a search which the [police] knew or should have know was unconstitutional under the Fourth Amendment," *United States v. Johnson*, 457 U.S. 537, 565 (1982) (White, J., dissenting), the rule is intended to deter only "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009).

---

[4] "Because the language of the Fourth Amendment and article I section 11 of the Wisconsin Constitution is substantially similar, Wisconsin courts follow the United States Supreme Court's interpretation of the Fourth Amendment when construing article I section 11 of the state constitution." *State v. Padley*, 2014 WI App 65, ¶23 n.6, 354 Wis. 2d 545, 849 N.W.2d 867.

¶15 The good faith exception to the exclusionary rule exists where "the officers conducting an illegal search 'acted in the objectively reasonable belief that their conduct did not violate the fourth Amendment.'" *State v. Dearborn*, 2010 WI 84, ¶33, 327 Wis. 2d 252, 786 N.W.2d 97 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)); *State v. Foster*, 2014 WI 131, ¶48, 360 Wis. 2d 12, 856 N.W.2d 847. "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful," the good faith exception applies because "the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 564 U.S. at 238 (internal citations and quotation marks omitted). Pertinent here, the good faith exception applies to searches conducted in reasonable reliance on subsequently invalidated statutes. *See Davis*, 564 U.S. at 237-41; *Illinois v. Krull*, 480 U.S. 340, 349-60 (1987).

## II. Additional Pertinent Background

¶16 Officer Smith testified that in this case he read Paull the informing the accused form and directed the blood test without a warrant consistent with his training and his department's policy. He testified that he was aware of the cases *Missouri v. McNeely*, 561 U.S. 141 (2013), and *State v. Padley*, but not the footnote in *Padley* "in regards to unconscious drivers."[5] He testified that, "as a

---

[5] In *Padley*, 354 Wis. 2d 545, ¶40, this court explained that Wisconsin's implied consent law "authorizes police to require drivers to choose between giving actual consent to a blood draw, or withdrawing 'implied consent' and suffering implied-consent-law sanctions." This court expressly stated that the opinion did not address the unconscious driver provisions of the implied consent law. *Id.*, ¶39 n.10.

(continued)

result of the *McNeely* case," he was trained in the process for obtaining a warrant by telephone and testified that the process takes a short amount of time.

¶17    The circuit court explained in its decision and order denying Paull's motion to suppress that the cases of which Officer Smith testified he was aware did not address the unconscious driver provisions of Wisconsin's implied consent law, and that there was no "suggestion" in the record that, when Smith was responding to the scene of Paull's accident, Smith had access to any "advisory" legal opinions as to whether the cases "allowed him to do *exactly what the statutes told him he could do* and his department manual *required* him to do." The court noted that Paull argued that best practices dictated that Smith should have obtained a warrant, rather than complying with existing Wisconsin law. However, the court determined that Smith acted in objectively reasonable reliance on existing Wisconsin law. Accordingly, the court concluded that suppression was not an appropriate remedy.

## III.  Analysis

¶18    I agree with the circuit court. The record shows that Officer Smith's actions were consistent with existing Wisconsin law governing unconscious drivers. As indicated in the footnote above, *McNeely* held that, absent the

---

In *Missouri v. McNeely*, 561 U.S. 141 (2013), the United States Supreme Court, addressing one of the exceptions to the warrant requirement for a reasonable search—the existence of exigent circumstances—"concluded that the fact that intoxicants metabolize in the driver's bloodstream does not constitute a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement, but is only one factor to be weighed in the analysis" of whether a warrant is required. *Padley*, 354 Wis. 2d 545, ¶¶23, 46. *McNeely* did not address the constitutionality of unconscious driver provisions.

existence of any exceptions to the warrant requirement, the dissipation of alcohol in the bloodstream does not alone dispense with the warrant requirement; *McNeely* did not, however, address the constitutionality of blood tests absent a warrant in an unconscious driver situation. *Padley* expressly did not address the unconscious driver situation. Given that neither the *McNeely* nor the *Padley* case addressed unconscious drivers, it is not objectively reasonable to expect an officer in 2015 to have drawn from those cases inferences against the constitutionality of Wisconsin laws permitting blood tests from unconscious drivers. At the time of Paull's blood draw, no court had deemed Wisconsin's unconscious driver provisions unconstitutional. I conclude that it was objectively reasonable for Smith to rely on those provisions, and, therefore, that the good faith exception to the exclusionary rule applied. *See Krull*, 480 U.S. at 349 (the exclusionary rule did not apply where the officer performed an illegal search while "acting in objectively reasonable reliance on a statute").

¶19     Paull argues that Smith's reliance was not objectively reasonable because he should have known that the unconscious driver provisions are unconstitutional. *See id.*, 480 U.S. at 355 (there is no good faith reliance on a statute if "a reasonable officer should have known that the statute was unconstitutional"). Specifically, Paull argues that Smith should have known that the "blanket rule" in the unconscious driver provisions could not withstand the prescription in *McNeely* that "whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 569 U.S. at 156.

¶20     Paull's argument may support his position that the unconscious driver provisions are unconstitutional to the extent that they are contrary to this language in *McNeely*. However, it does not render Smith's reliance on the

provisions objectively unreasonable where, in September 2015, at least one appeal from a conviction in a case concerning the constitutionality of the unconscious driver provisions was pending in the Wisconsin courts, and those provisions had yet to be invalidated. *See **State v. Mitchell***, 2018 WI 84, ¶15, 383 Wis. 2d 192, 914 N.W.2d 151 (vacated and remanded by ***State v. Mitchell***, 139 S.Ct. 2525 (June 27, 2019) (in which the notice of appeal was filed in February 2015 and the Wisconsin Supreme Court did not accept until April 2017 the Court of Appeals' certification of the question of "whether a warrantless blood draw from an unconscious person pursuant to [Wisconsin's implied consent law] violates the Fourth Amendment").[6]

¶21    Thus, I conclude that the circuit court properly applied the good faith exception to the exclusionary rule and denied Paull's motion to suppress.

## CONCLUSION

¶22    For the reasons stated, I affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.    See WIS. STAT. RULE 809.23(1)(b)4.

---

[6] This opinion is of course confined to the record before the court and does not address what may constitute good faith reliance regarding the same provisions in different circumstances at different times.